**Ex parte John B. HOLMES, Jr.**

**No. 69890.**

Court of Criminal Appeals of Texas, En Banc.

May 18, 1988.

Roger Bridgwater, Ted Doebbler, Houston, for respondents.

John B. Holmes, Jr., Dist. Atty., Calvin A. Hartmann and J. Harvey Hudson, Asst. Dist. Attys., Houston, for applicant.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This proceeding involves an application for writ of habeas corpus invoking the original jurisdiction of this Court.[1] The applicant, the District Attorney of Harris County, attacks an order of contempt entered against him in the 183rd District court for refusing to proceed in the prosecution of a criminal case. As punishment applicant was assessed three days in the county jail.

The record reflects that the Honorable Wallace C. Moore, a retired district judge of the 184th District Court of Harris County, and eligible for judicial assignment,[2] was assigned by the Honorable Thomas Stovall, Jr., Presiding Judge of the Second Administrative Judicial Region, to the

---

1. See Article I, § 5, Tex. Constitution; Article 11.05, V.A.C.C.P.; *Ex parte Clear,* 573 S.W.2d 224 (Tex.Cr.App.1978); *Ex parte Salfen,* 618 S.W.2d 766 (Tex.Cr.App.1981); *Ex parte Moorehouse,* 614 S.W.2d 450 (Tex.Cr.App.1981).

2. The record shows Judge Moore was a retired judge under Subtitle E, Title 110B, Revised Statutes, and eligible for assignment. Now see V.T. C.A., Government Code, § 74.054 (effective Sept. 1, 1987), renumbered from § 74.032.

183rd District Court of Harris County for a period of three weeks, beginning on August 24, 1987.

During the course of said assignment on September 1, 1987, Judge Moore called for trial Cause No. 483,226, a burglary charge pending in the 183rd District. Apparently the defendant had indicated he would plead guilty. The applicant personally appeared and refused to prosecute that cause because (1) the Honorable Jay Burnett, the duly elected and acting judge of the 183rd District Court was at the time sitting in another courtroom conducting the voir dire examination of a jury panel in a capital murder case, and (2) that V.T.C.A., Government Code, § 24.961, had become effective that very day (Sept. 1, 1987), and that Judge Moore as a visiting judge lacked authority and jurisdiction to try cases by virtue of said provision and the fact the regular judge was present and trying a case.

Section 24.961 provides: "The district courts in Harris County may not sit in more than one location. The courts may not establish an annex or branch court."

Judge Moore found that applicant's reliance on § 24.961 for his claim of the court's lack of authority and jurisdiction was unfounded, and further declared said section to be unconstitutional.

When applicant refused to proceed in the said cause number Judge Moore found him in contempt of court. Since the applicant was an officer of the court he was released on his personal recognizance, and Judge Stovall assigned the Honorable Jon Hughes of the 174th District Court of Harris County as "a judge of a district court that is not

the offended court" to make a determination of applicant's guilt or innocence in accordance with V.T.C.A., Government Code, § 21.002(d) (former Article 1911a, V.A.C.S.).[3]

At the hearing before Judge Hughes the applicant district attorney testified "The actions that I am taking is a good faith belief that the courts lack jurisdiction because of the philosophy expressed by the legislature either intentionally, accidently or stupidly." He estimated that visiting judges dispose of approximately one hundred cases a week at a minimum in Harris County, but he had a duty to uphold the law. "I think whatever public policy was expressed by the legislature is not in the best interest of the public, but obviously I am not one free to express my personal policy. That's an act done by the legislature."

The Honorable Miron O. Love, Judge of the 177th District Court and Administrative Judge for Harris County, also testified. He agreed with applicant's estimate of the disposition of cases by a visiting judge. When asked if he knew what the legislative intent was in enacting § 24.961 he responded, "I have no earthly idea."

At the conclusion of the hearing on September 2, 1987, Judge Hughes found applicant in contempt of the 183rd District Court and assessed punishment at three days' confinement in the county jail. Judge Hughes found applicant's reliance upon § 24.961 of the Government Code was unjustified, that the statute was unconstitutional, etc.

Applicant, then, by his habeas corpus application invoked the original jurisdiction

---

3. Section 21.002(d) of the Government Code provides:

"(d) An officer of the court who is held in contempt by a trial court shall, on proper motion filed in the offended court, be released on his own personal recognizance pending a determination of his guilt or innocence by a judge of a district court that is not the offended court. The presiding judge of the administrative judicial district in which the alleged contempt occurred shall appoint a judge of a district court other than the offended court to determine the guilt or innocence of the officer of the court."

Applicant notes in his brief that the hearing before Judge Hughes was on September 2, 1987, while Judge Burnett, the regular judge of the 183rd District Court, was present and still trying a capital case, that if said § 24.961 is to be construed as preventing an assignment of a district judge to a court in Harris County while the regular judge is present and trying cases then Judge Hughes' assignment or authority to act might well be questioned even if it was in accordance with § 21.002(d), supra.

of this Court, and has been released on a $100.00 personal bond pending further orders of this Court.

In construing the validity of the statute in question it is helpful to view the historical background in Texas of district judges exchanging benches or holding court for each other, and the system of assignment of such judges, as well as the enactment of the statute and its forerunner pertaining to Harris County alone.

## HISTORY OF JUDICIAL ASSIGNMENTS

In 1842, six years after the Battle of San Jacinto, the Congress of the Republic of Texas enacted legislation which declared "[t]hat any of the judges of the district courts are hereby authorized to hold the courts in any other district than their own, by arrangement with each other; and all judgments or proceedings before such judge shall be as good in law and equity, as if the court was held by the judge of the district." 2 A. Gammel, Laws of Texas 757 (1842). After entering the Union, the first State Constitution of 1845 provided that district judges "may exchange districts, or hold courts for each other, when they deem it expedient, and shall do so when directed by law." Article IV, § 14 (1845). The same provision is found in the 1861 Constitution, Article IV, § 14, and in Article IV, § 12 of the 1866 Constitution, as well as in Article V, § 11 of the 1869 Constitution. The same language is found in the present 1876 Constitution in Article V, § 11, except the phrase "directed by law" was replaced by "required by law." Since 1845 then the Constitution has authorized district judges not only to exchange benches but to also hold court for each other.[4]

The Legislature has, over the years, taken note of the aforementioned provisions as it has promulgated legislation concerning judicial procedures. In 1846 the Legislature declared that "... any [district] judge may hold court *with* any other district judge...." 2 H. Gammel, Laws of Texas 1509 (1846) (Emphasis supplied). Until recently this provision or similar one has been carried forward by the Legislature through numerous revisions of the State's statutes. See Article 1124, Tex.Rev.Civil Statutes (1879) ["any judge of the district court may hold courts for or with any other district judge, and the judges of the several district courts may exchange districts whenever they may deem it expedient to do so."] See also Article 1108, Tex.Rev.Civil Statutes (1895); Article 1715, Tex.Rev. Civil Statutes (1911); Article 1916, Tex.Rev. Civil Statutes (1925).

In 1927 the foregoing was supplemented when the Legislature recognized the existence of an "emergency" condition due to the congested dockets of the various district courts at that time. See Acts 1927, 40th Leg., ch. 156, § 12 at 231. Acknowledging "that there are now so many cases pending on the dockets of the several district courts of this state which cannot be reached because of the press of business, and the fact that there are other district judges whose time is not all taken," the Legislature enacted Article 200a of the civil statutes to provide in § 5 of that Act:

"Judges may be assigned in the manner herein provided for the holding of district court when the regular judge thereof is absent or is from any cause disabled or disqualified from presiding, *and in instances where the regular district judge is present or himself trying cases where authorized or permitted by the Constitution and laws of the State.*"

When interpreting the various foregoing statutes the appellate courts of this state have uniformly endorsed the position that the Legislature has done no more than grant to district judges by statute what they already inherently possessed by constitutional provision.

In *Munzesheimer v. Fairbanks*, 82 Tex. 351, 18 S.W. 697 (1891), the district judge of Bowie County, engaged in trying one case, requested another district judge to

4. See also Article V, § 7, Tex. Const., providing: "The Legislature shall ... providing for the holding of District Court when the judge thereof is absent, or is from any cause disabled or disqualified from presiding."

hear the appellant's case. The appellant complained on appeal that two judges could not simultaneously hear cases docketed in the same district court. The Supreme Court rejected the claim and affirmed the judgment noting that the Constitution provides that "the district judges may exchange districts, or hold courts for each other, when they deem it expedient." *Id.* 18 S.W. at 698. See also *Currie v. Dobbs*, 10 S.W.2d 438 (Tex.Civ.App.—El Paso 1928, no writ).

In *Eucaline Medicine Co. v. Standard Co.*, 25 S.W.2d 259 (Tex.Civ.App.—Dallas 1930, writ ref'd), the court wrote:

"The argument of counsel is, in effect, that jurisdiction is indivisible and individual and cannot be exercised concurrently in the same court at the same time by two judges trying different cases.

"After making provision for holding special terms of district courts, also for holding court in instances where the regular judge is absent, or from any cause is disabled or disqualified to preside, or has exchanged districts with another judge, the Constitution makes the further provision in section 11, art. 5, as follows: '... And the district judges may ... hold courts for each other when they may deem it expedient, and shall do so when required by law.'

"On the occasion under review, Judge Watkins, the regular judge of the 95th district was neither absent, disabled, disqualified from presiding, nor had he and Judge Williams exchanged districts, but at the time Judge Williams was trying this case, Judge Watkins was also presiding in his court engaged in the trial of another case.

"One of the cardinal rules for constitutional construction is that effect must be given, if possible, to the whole instrument and to every section and clause. [Citation omitted].

"The provision of the Constitution above quoted, evidently, was not intended to duplicate other provisions for holding court, such as when the regular judge is absent, disabled, disqualified, or has exchanged districts. The quoted provision has a distinct meaning all its own, and obviously contemplates the holding of court by one judge with another, under circumstances not elsewhere provided for in the Constitution. Unless we ascribe to it this meaning, we must conclude that the provision is futile and a needless duplication. The latter view, however, is not permissible under the applicable rule of construction above mentioned."

See also *Cyrus v. Scott Mfg. Co. v. Haynie*, 64 S.W.2d 1090 (Tex.Civ.App.–Austin 1933, writ dism'd w.o.j.); *Permian Corp. v. Pickett*, 620 S.W.2d 878, 881 (Tex.Civ.App.–El Paso 1981, writ ref'd n.r.e.)

And this Court has repeatedly held that two district judges may simultaneously conduct judicial proceedings for the same district court. See *Oliver v. State*, 70 Tex. Cr.R. 140, 159 S.W. 235, 239 (1913); *Hamilton v. State*, 74 Tex.Cr.R. 219, 168 S.W. 536, 537 (1914); *Haley v. State*, 151 Tex.Cr. R. 392, 208 S.W.2d 378 (1948); *Reed v. State*, 500 S.W.2d 137 (Tex.Cr.App.1973); *Zamora v. State*, 508 S.W.2d 819, 823 (Tex. Cr.App.1974). In *Herrod v. State*, 650 S.W.2d 814, 817 (Tex.Cr.App.1983), this Court, relying in part on Article V, § 11 of the Constitution, held that "when a regularly elected district judge or a duly eligible retired district judge is assigned by an administrative assignment to another district court, it makes no difference if the judge of the court to which assignment is made is functioning and presiding over the said court at the same time." See also 47 Tex. Jur.3d, Judges, § 105.

As further background it must be remembered that for many years Article 199, V.A.C.S., was *the* apportionment statute dividing the state into judicial districts and setting the terms of the district courts, etc. In 1969, another apportionment act, Article 199a, V.A.C.S., was enacted (Acts 1969, 61st Leg., 2nd C.S., ch. 23, p. 150). It was known as the Judicial Districts Act of 1969 (§ 1.001) and except as otherwise indicated the Act applied only to judicial districts created by the Act or by amendments thereto (§ 1.002). In addition Article 200a, supra, at least since 1927, governed the administration of the state district courts

and the assignment of regular and retired district judges to preside in other district courts, etc.

### 1983

In 1983 House Bill 1473, amending Article 199a, supra, was introduced in the 68th Legislature, an omnibus district courts bill, proposing the creation of certain new judicial district courts in various counties in the state, including the 337th, 338th, 339th and the 351st judicial district courts of Harris County.

After H.B. 1473 passed the House it was sent to the Senate where, among other changes, an addition was made to the bill proposing an amendment, not to Article 199a, supra, but as an amendment to Article 200a, supra, by adding § 5f to prohibit the assignment of a judge to sit in Harris County "if the regular district judge is present or trying cases."

Thus, while the main thrust of H.B. 1473 was to amend Article 199a, supra, the proposed addition, as added in the Senate, sought to amend a different statute, Article 200a, supra. One evident purpose of the said Article 200a, of course, was to provide for the continuation of business in the state district courts even during the absence or incapacity of the regularly elected district judge or during a vacancy due to death. The statute also functioned widely as a device for expediting the trial of cases in district courts with overcrowded dockets by assigning regular or retired district judges to preside simultaneously with the duly elected judge.

For reasons undisclosed by an examination of the legislative history, the proposed addition sought to abolish or severely restrict this practice in Harris County, the most populous county in the state with the largest number of district courts, both civil and criminal, and with the heaviest case load in the state.

After the amendments to H.B. 1473 in the Senate, including the above described addition, were adopted the bill was returned to the House. The House refused to accept the other chamber's version and a joint conference committee was appointed to resolve the differences.

The conference committee added several exceptions to the proposed senatorial addition and it became § 26 of the bill reading:

"Chapter 156, Acts of the 40th Legislature, Regular Session, 1927 (Article 200a, Vernon's Texas Civil Statutes), is amended by adding Section 5f to read as follows:

"*Section 5f. Notwithstanding any other provision of this Act, neither the chief justice nor the presiding judge of the administrative judicial district in which Harris County is located may assign a judge to a court in Harris County if the regular district judge is present or trying cases unless the assignment is for the regular docket of the:*

"*(1) presiding administrative judge and the judge is present attending to administrative duties; or*

"*(2) presiding judge of a court created by the legislature and the judge is trying a capital murder case.*"

The conferees also added a § 27 to the bill which read:

"Section 27. The district courts in Harris County may not sit in more than one location. The courts may not establish an annex or branch court."

There is little or no legislative record to shed light on the legislative intent regarding this particular provision which is the precursor of the statute which is the focal point of the question presented by this proceeding.

Eventually H.B. 1473 passed both houses of the Legislature with §§ 26 and 27 contained therein. See Acts 1983, 68th Leg., ch. 889, p. 4975. The bulk of the bill creating new district courts was codified under Article 199a, supra, and § 26 became § 5f of Article 200a, supra.

Section 27 of H.B. 1473, however, was original legislation. It did not purport to amend either Article 199a or 200a. Its language was broad, and its meaning not clear. It did not speak of the assignment of judges, either directly or expressly. Its

terminology was different from that of § 26 in the same bill. It is no wonder that West Publishing Company may have had a problem in determining where to codify this piece of original legislation. Said § 27 was codified awkwardly as a note to Article 199a, supra, apparently because the principal subject matter of H.B. 1473 had been additions to Article 199a.

▆▆▆ To give the said § 27 the same construction the applicant gives to § 24.961 of the present Government Code with the same language, we would find that H.B. 1473 contained two conflicting statutes peculiar to Harris County. One of them (§ 27) would seemingly abolish, without exception, the possibility that two district judges could sit on the same court at the same time to dispose of cases. The other statute (§ 26) would permit one judge to sit by assignment concurrently with the regular judge only if the regular judge was engaged in trying a capital murder case, or the regular judge is the presiding administrative judge and is engaged in such duties. Under such construction, § 27 would cancel out the exceptions of § 26 although § 27 uses different terminology. A construction that it was the legislative intent for one section of the same bill to cancel another is never favored.[5]

Be that as it may, it does not appear that after H.B. 1473 became law that the codified note to Article 199a, supra, was inter-

---

5. In construing § 26 of H.B. 1473 it is observed that the first sentence provides: "The district courts in Harris County may not sit in more than one location." (Emphasis supplied.) It is unreasonable to conclude that the Legislature intended that all the Harris County district courts, civil and criminal, to sit in one courtroom or area like the early English courts did in Westminister Hall. Judicial notice can be taken that the district courts of Harris County even sit in different buildings. The first sentence is completely compatible with the provision of the Texas Constitution that district courts are to sit at the county seat. See Article V, § 7, Texas Constitution. Many statutory provisions are counterparts to constitutional requirements. One need only to look at the Code of Criminal Procedure and Penal Code for many common examples.

The second sentence of said § 24.961 provides: "The courts may not establish an annex or branch court." Of course, courts cannot establish any type of court period, much less an annex or branch court, whatever those are. Only the Legislature may establish "other courts" than those designated in the Constitution. See Article V, § 1, Texas Constitution. The second sentence is also compatible with constitutional provisions.

Further, the term "an annex or branch court" was not defined for the purpose of the statute and is not found elsewhere in our codes or statutes.

As earlier noted, this Court has repeatedly upheld the validity of an administration assignment of a regular or retired judge to a district court when the duly elected judge of that court is present and trying cases. *Peach v. State,* 498 S.W.2d 192 (Tex.Cr.App.1973); *Gregory v. State,* 495 S.W.2d 891 (Tex.Cr.App.1973); *Reed v. State,* 500 S.W.2d 137 (Tex.Cr.App.1973); *Crawford v. State,* 509 S.W.2d 582 (Tex.Cr.App.1974); *Hunnicutt v. State,* 523 S.W.2d 244 (Tex.Cr.App.1975). See also *Buchanan v. State,* 471 S.W.2d 401 (Tex.Cr.App.1971); *Haley v. State,* 151 Tex.Cr.R. 392, 208 S.W.2d 378 (1948). Thus, there is no prohibition against two or more judges trying different cases in the same court at the same time, each occupying a different courtroom. *Reed,* supra. See also *Permian Corp. v. Pickett,* 620 S.W.2d 878, 881 (Tex.Civ.App.–El Paso 1981, writ ref'd n.r.e.) In some of the cases the court had noted that for local convenience the court or courtroom in which the temporarily assigned judge sat was referred to as "Annex Court A" or "Impact Court," etc. The contention on appeal in many of these cases has been that these were not legislatively created courts and thus invalid. In rejecting this contention the court has upheld the temporary administration assignment of a judge to a district court where the regular judge was present, but has not held that such practice constituted the establishment of a valid annex or impact court, or whatever local term was used for convenience in various counties.

The word "establish" is used in the second sentence of § 24.961 as well as in Article V, § 1, Texas Constitution, with regard to the establishment of courts. The Reader's Digest Great Encyclopedic Dictionary including Funk & Wagnalls Standard College Dictionary defines "establish" as "1. To make secure, stable, or permanent, fix firmly in a particular place or condition. 2. To set up, found, or institute on a firm or lasting basis...."

The words and phrases within a statute must be read in the context in which they are used. V.T.C.A., Government Code, § 311.011(a). The word or phrase must then be construed according to the rules of grammar and common usage. *Id.*

It can hardly be said that a temporary administrative assignment of a judge for a week or two to a district court in Harris County, whether the regular judge is present or not, "establishes" another court, whether annex or branch, or of any other kind.

preted or utilized at all with regard to the assignment of district judges in Harris County, either to the civil or criminal courts. It did not appear to be complementary to § 5f of Article 200a, supra (§ 26 of H.B. 1473), and its language was certainly not interpreted as the applicant has urged § 24.961 to be interpreted. The record indicates that while § 5f was followed there was no observance of the awkward note to Article 199a, supra.

### 1985

■ Then along came 1985 and the enactment of two legislative projects bearing on the inquiry before the court.

In 1985 the Legislature first enacted Government Code, Title 2, Judicial Branch (Acts 1985, 69th Leg., ch. 480, p. 3363, eff. Sept. 1, 1985) (S.B. 1228). The Code was enacted as a part of the state's continuing statutory revision program begun by the Texas Legislative Council in 1963 as directed by the Legislature in Chapter 448, Acts of the 58th Legislature, Regular Session (Article 5429b–1, V.A.C.S.). The program contemplates a topic by topic revision of the state's general and permanent statute law *without substantive change.* See V.T. C.A., Government Code, Chapter 1 (General Provisions), § 1.001 (Purpose of Code). Said S.B. 1228 itself was an act "relating to adoption of a nonsubstantive revision of the statutes relating to the judiciary; making conforming amendments and repeals and including penalties." §§ 2 to 25 of S.B. 1228 were amendatory provisions and § 26 was a repealer clause for a number of statutes. § 27 of the bill provided:

"Legislative Intent. This Act is enacted pursuant to Article III, Section 43 of the Texas Constitution. *This Act is intended as a recodification only, and no substantial change in the law is intended by this Act.*" (Emphasis supplied.)

Articles 199 and 199a, supra, the apportionment statutes, were brought forward in Chapter 24 of the Government Code. The note to Article 199a (one location—no annex court in Harris County provision) was not, however, brought forward. Article 200a, supra, was incorporated in Chapter 74 of the Government Code. In fact, § 5 of Article 200a, supra, was brought forward as § 74.031 of the code and provided:

"Section 74.031. Assignment of Judges

"Judges may be assigned in the manner provided *by this chapter* to hold district court when

"(1) the regular judge of the district court is absent or is disabled or disqualified for any cause;

"(2) the regular judge of the district court is present and is trying cases or authorized by the Constitution and laws of this state; or

"(3) the office of district judge is vacant." (Emphasis supplied.)

The limitation upon assignment of district judges applicable only to Harris County with certain exceptions, § 5f of Article 200a, supra [§ 26 of H.B. 1473 (1983)] became § 74.061 of the code unchanged.

In § 26 of S.B. 1228 many statutes were expressly repealed including Articles 199, 200a and 1916, V.A.C.S. Article 199a, however, although it had been brought forward in Chapter 24 of the Government Code, was not expressly repealed, either by oversight or omission. See and cf. 53 Tex.Jur.2d, Statutes, § 109, p. 158.

S.B. 1228 was passed by the Senate on April 24, 1985, and passed the House on May 17, 1985. It was filed without signature on June 13, 1985, and became effective September 1, 1985.

During the same session the Legislature enacted the Court Administration Act which became Article 200a–1, V.A.C.S. (Acts 1985, 69th Leg., ch. 732, p. 4985, eff. Jan. 1, 1986) (H.B. 1658). This statute was a product of the work of the Joint Committee on the Judiciary which was established by the 68th Legislature to report to the 69th Legislature. The statute dealt with much the same subject matter as Chapter 74 of the Government Code (S.B. 1228). While many, but not all, of the provisions in Article 200a, supra, were retained in Chapter 4, the act repealed Article 200a and enacted in its place a new and more comprehensive act for the administration of

the courts that comprise the judicial system of the State. Section 1 of H.B. 1658 provided in part:

"Section 1 Declaration of Policy

"It is the policy of the state that the administration of justice shall be prompt and efficient ... It is the further intent of the legislature that the administration of trial courts in this state be improved in order to provide all citizens of this state a prompt, efficient and just hearing and disposition of all disputes before the various courts, ...:"

Section 4.012(a) of the Court Administration Act provided broadly: "(a) Judges may be assigned in the manner provided by this chapter to hold court when necessary to dispose of accumulated business in the region." Sections 4.016 and 4.107 of the act contained general provisions applicable to all counties provided for the assignment of judges by the presiding judge of the administrative region and by the Chief Justice of the Supreme Court. The provisions of § 74.031 of the Government Code (formerly § 5a of Article 200, supra), providing for "when" a district judge may be assigned was not included. Section 74.061 of the Government Code (formerly § 5f of Article 200a, supra, and § 26 of H.B. 1473 (1983)), limiting the assignment of district judges in Harris County with exceptions were likewise not included in the Court Administration act. And, of course, the note to Article 199a, supra (formerly § 27 of H.B. 1473) (1983), was clearly not included. The Court Administration Act (Article 200a–1, supra), a comprehensive act, did not contain any of the former restrictions on the assignment of district judges.

Further, Chapter 8, § 6 of H.B. 1658, enacting the Court Administration Act, provided:

"Section 6. *All laws and parts of law inconsistent with or in conflict with this act are repealed.*" (Emphasis supplied.)

H.B. 1658 passed the House and Senate on May 27, 1985. It was approved on June 14, 1985, and became effective January 1, 1986.

On April 14, 1986, the Attorney General answered the question of District Attorney John Holmes of Harris County (the present applicant) concerning, in light of the 1985 legislation, the authority of the Chief Justice of the Supreme Court and the Presiding Judge of the administrative judicial region to assign judges to try cases and dispose of accumulated business in the district courts in Harris County. See Attorney General Opinion J M 474 (April 14, 1986).

The opinion recognized the enactment of §§ 26 and 27 of H.B. 1473 in 1983 and set out both therein. It then concentrated only on § 26 which had become § 5f of Article 200a and then in 1985 § 74.061 of the Government Code. After observing the two 1985 enactments discussed above (Government Code and the later enacted Court Administration Act), the opinion noted that a law may be repealed by implication, and that where a later enactment is intended to embrace all the law on the subject with which it deals, it repeals all former laws relating to the same subject. See *Motor Inv. Co. v. City of Hamlin,* 142 Tex. 486, 179 S.W.2d 278, 281 (1944); *Gordon v. Lake,* 163 Tex. 392, 356 S.W.2d 138, 139 (1962), and *McInnis v. State,* 603 S.W. 2d 179, 183 (Tex.1980). The Attorney General's opinion held that when the Court Administration Act provided for the assignment of judges without restriction and made the same applicable to all counties, and did not include within its framework § 74.061 of the Government Code (formerly § 5f of Article 200a, supra) that the Act repealed § 74.061 by implication. The Attorney General's opinion also relied upon § 311.031(d) of the Government Code (Code Construction Act), which provides that "if any provision of a code conflicts with a statute enacted by the same legislature that enacted the code, the statute controls." In its summary the opinion stated:

"The assignment of judges to the district courts are authorized without restrictions by the Court Administration Act is applicable to all counties, including Harris County. The limitation on assignment to Harris County in § 74.061 of the

Government Code was repealed by the legislature."

■ As can be seen the opinion's analysis did not include a discussion of the note to Article 199a, the original piece of legislation from H.B. 1473 (1983) (one location— no annex courts in Harris County) although it was mentioned in passing. The opinion is somewhat flawed by this failure. Further, the Attorney General did not appear to rely upon Chapter 8, § 6 of the Court Administration Act (Article 200a–1, supra), which provided in part "All laws ... in conflict with this act are repealed." This provision would have also supported the Attorney General's opinion that § 74.061 of the Government Code was repealed, and it would likewise have repealed the note to Article 199a, supra, insofar as it is interpreted to prohibit the assignment of district judges in Harris County where the regular judge is present or trying cases.[6]

Thus, it is clear that § 74.061 of the Government Code and the note to Article 199a, supra, were repealed prior to the legislative session in 1987.

### 1987

In 1987 the Legislature amended the Government Code, Title 2, Judicial Branch. (Acts 1987, 70th Leg., ch. 148, p. 1064, eff. Sept. 1, 1987) (S.B. 895) The title read: "An act relating to conforming the Judicial Title of the Government Code to certain acts of the 69th Legislature conforming that title to amendments to the constitutional proposed by the 69th Legislature adopted by the voters *and to nonsubstantively related statutes.*" (Emphasis supplied.) See also § 5.01(a) of said bill.

Apparently the Legislative Council, largely responsible for the continuing recodification, had discovered that although Article 199a, supra, had been revised in the Government Code as Subchapter C, Chapter 24, it had not been *expressly* repealed in the 1985 bill (S.B. 1228) enacting the Government Code. Thus in S.B. 895 an

express repealer for Article 199a was provided in § 2.100 of the bill. See also §§ 2.13, 2.14 and 2.15. At the same time the council apparently found that the note to Article 199a, supra [§ 27 of H.B. 1473 (1983)] had not been brought forward into the Government Code. Thus said "note" was enacted in § 2.26 of S.B. 895 as Subchapter G, § 24.961 of the Government. (The District Courts of Harris County may not sit in more than one location. The courts may not establish an annex or branch court.)

This was intended as a housekeeping action to nonsubstantively codify certain "related statutes" because of an omission or oversight. Apparently no consideration was given to repealing provision of the bill enacting the Court Administration Act (Chapter 8, § 6), or other rules of statutory construction favoring repeal. Clearly the note to Article 199a was repealed before it was attempted to be brought forward masquerading as a nonsubstantive change.

Further and most important to any effect of § 24.961 of the Government Code on the question presented is the provision of § 5.01(b) of S.B. 895 by which § 24.961 was also enacted which provides:

"This act does not affect the validity of the Court Administration Act (Article 200a–1, Vernon's Civil Statutes) or Chapter 602, Acts of the 69th Legislature, Regular Session, 1985, except as those Acts are expressly repealed by this act."

And the said S.B. 895 did not *expressly* repeal any portion of Article 200a–1, supra (Court Administration Act), which permitted the assignment of judges in any county without any restriction.

Section 2.93(a) of S.B. 895 noted that Chapter 74, Government Code, was being amended to conform in part to the Court Administration Act and the said Chapter 74 was designed "The Court Administration Act."

In this regard the drafters of S.B. 895 did recognize that § 74.061 of the Govern-

---

**6.** Said Chapter 8, § 6, is a general repealing statute. Such a clause is effective to repeal prior enactments to the extent that they are inconsistent with or repugnant to, the terms of the later statute. *Ex parte Coleman,* 157 Tex.Cr.

R. 37, 245 S.W.2d 712 (1952), unless the intent of the Legislature is so evident so as to preclude any such construction. *Coleman,* supra; *Berry v. State,* 69 Tex.Cr.R. 602, 156 S.W. 626 (1913).

ment Code (no assignments in Harris County with certain exceptions) [formerly § 5f of Article 200a, supra, and § 26 of H.B. 1473 (1983)] had been repealed by the Court Administration Act, and it was also repealed by the provisions of the bill (Acts 1987, 70th Leg., ch. 148, § 2.93, p. 1173).

Further, the drafters of S.B. 895 amended and renumbered § 74.031 of the Government Code (Acts 1985, 69th Leg., ch. 480, p. 4032) to § 74.052 which then provided in subsection (a) that "Judges may be assigned in the manner provided by this chapter to hold court when necessary to dispose of accumulated business in the region."[7] This new version was in line with the unrestricted assignment provisions of the Court Administration Act.

S.B. 895 passed the Senate on March 18, 1987, and the House on April 30, 1987. It was approved May 21, 1987, and became effective September 1, 1987.

■ During this same legislative session, however, the Court Administration Act (Article 200a–1, supra) was repealed and conformed in part to Chapter 74 of the Government Code (Acts 1987, 70th Leg., ch. 674, p. 5017, effective August 31, 1987) (S.B. 687) A reading of the various amendments in Chapter 74 make clear that the assignment of district judges is unrestricted in any county when done in the manner provided by Chapter 74 and "when necessary to dispose of the accumulated business in the region." See § 74.052.

## CONCLUSION

■ Since § 74.061 [former § 26 of H.B. 1473 (1983)] has been repealed in its entirety, this leaves only § 24.961 of the Government Code [former 27 of H.B. 1473 (1983)], which could possibly be interpreted as prohibiting the assignment of district judges in Harris County, if its broad language can be so read. If it can be argued that such an interpretation is possible, then it must be remembered that the provision, a piece of original legislation, was originally codified as a note to former Article 199a, supra. It was then repealed by Chapter 8, § 6 of the bill (H.B. 1658) enacting the Court Administration Act in 1985 which repealed all laws in conflict. Thus, it was improper to bring the provision forward in 1987 into the Government Code as § 24.961 masquerading as a nonsubstantive change. Even if this was not so, § 24.961 must be viewed in light of § 5.01(b) of S.B. 895 (1987) that the validity of the Court Administration Act is not affected by the Act (enacting § 24.961) unless expressly repealed by the Act. This limitation on § 24.961 was not removed by the subsequent incorporation of the Court Administration Act into Chapter 74 of the Government Code by later legislation with its manifest intent.[8]

Thus, even if the said § 24.961 is given the interpretation urged by the applicant, it should be clear from the reasons stated that § 24.961 cannot be said to prohibit the assignment of judges in Harris County, and it did not prohibit the assignment of Judge Moore to the 183rd District Court of Harris County, or rather, did not call for the termination on September 1, 1987, of his three week assignment to the said court.

Under the circumstances we are not called upon to reach the questions of the constitutionality of § 24.961.

The relief prayed for by applicant is denied.

CLINTON, J., concurs in the result.

---

7. The earlier version (§ 74.031) had included provisions as to "when" judges could be assigned. See former Article 200a, § 5, V.A.C.S.

8. Although Article 200a–1 (Court Administration Act) was repealed when incorporated into the Government Code, its repeal did not revive the note to Article 199a which Article 200a–1 had repeal nor give a new life to § 24.961.

V.T.C.A., Government Code, § 312.007 (Code Construction Act), provides that the repeal of a repealing statute does not revive the statute originally repealed. See also V.T.C.A., Government Code, § 311.030. Thus, § 24.961 (formerly note to Article 199a, supra) was not revived by the repeal of the Court Administration Act (Article 200a–1, supra) in 1987.